UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ANTONIO TERRANCE COLEMAN,

                Petitioner,

v.                                Case No. 12-10883

DAVID BERGH,                 HON. TERRENCE G. BERG
                                        HON. MONA K. MAJZOUB

                Respondent.

_____/

**OPINION AND ORDER
DENYING PETITION FOR A WRIT OF HABEAS CORPUS, DENYING A
CERTIFICATE OF APPEALABILITY, AND DENYING PERMISSION
TO PROCEED ON APPEAL IN FORMA PAUPERIS**

    This matter is before the Court on Petitioner Antonio Terrance Coleman's petition for a writ of habeas corpus filed under 28 U.S.C. § 2254. Petitioner was convicted by a jury in the Wayne Circuit Court of: armed robbery, a violation of Michigan Compiled Laws § 750.529; possession of a firearm by a felon, a violation of Michigan Compiled Laws § 750.224f; and carrying or possessing a firearm when committing or attempting to commit felony, a violation of Michigan Compiled Laws § 750.227b. Petitioner was sentenced as a fourth-time-habitual-felony-offender, with the following terms of incarceration: 20-to-30 years for the armed robbery conviction, 3-to-5 years for the possession of a firearm by a felon conviction, and a consecutive two years for the possession of a firearm while committing a felony conviction. The petition claims that:

I. The decision of the Michigan Courts that Petitioner had failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question of whether he was denied his constitutional right to the effective assistance of appellate counsel on his appeal of right, was contrary to clearly established federal law.

II. The decision of the Michigan Courts that Petitioner failed to meet the burden establishing entitlement to relief under M.C.R. 6.508(D) with regard to the question of whether the trial court abused its discretion when it denied Petitioner's motion for relief from judgment without first conducting an evidentiary hearing, was contrary to clearly established law, as well as the trial court's "opinion" and "order" being an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

III. The Michigan Court of Appeals decision that the trial court did not abuse its discretion when it denied Petitioner's multiple motions for mistrial, based on: 1) the multiple references to Petitioner's photo as a "mugshot" by the officer-in-charge of the case, and; 2) the fact that the jury was informed that Petitioner was facing life imprisonment, was contrary to clearly established federal law, as well as being an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

After carefully reviewing the record, the Court finds that Petitioner's claims are without merit. Therefore, the petition will be denied. The Court also denies Petitioner a certificate of appealability, and denies permission to proceed on appeal in forma pauperis.

## FACTS AND PROCEDURAL HISTORY

This Court recites verbatim the relevant facts relied upon by the Michigan Court of Appeals, which under 28 U.S.C. § 2254(e)(1) are presumed correct on habeas review. *See Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009). Those facts are:

> Defendant's convictions arose out of the armed robbery of $20,000 in cash from Jerome Yono in the parking lot of the Super Y Market in Romulus on January 6, 2005. At approximately 3:20 p.m. that day, Yono, the store manager, was returning to the store from the bank carrying $20,000 in cash for the store's check-cashing business. A man later identified as defendant yelled "Jerome," and grabbed Yono from behind by his collar while holding a gun to his head. Yono threw the bag containing the cash toward the doors of the store. Defendant dragged Yono behind a truck and demanded money. Yono pointed toward the bag and told defendant that he had thrown it on the ground. Defendant retrieved the bag and got into the passenger side of an awaiting gold-colored sport utility vehicle ("SUV") which left the scene. The storeowner had observed the vehicle pulling in and out of parking spaces several hours before the robbery, and became suspicious. He wrote down the vehicle's license plate number, which he later gave to the police. Witnesses identified defendant as the perpetrator at a photographic lineup.

*People v. Coleman*, No. 268770, 2007 WL 1791694, at *1 (Mich. Ct. App. June 21, 2007). Based on this evidence the jury found Petitioner guilty, and he was subsequently sentenced as indicated above.

Before filing an appeal, Petitioner filed a pro se motion for a new trial in the trial court, raising numerous claims of trial error. The trial court held a hearing on the motion at which Petitioner argued his issues without counsel. The trial court denied the motion.

Petitioner then filed a claim of appeal and a request for the appointment of appellate counsel. His appellate brief, filed by his counsel, raised one claim: "The trial court abused its discretion in refusing to declare a mistrial where the veteran officer in charge repeatedly referenced [Petitioner's] prior record, described [Petitioner's] photograph as a "mug shot" and made a deliberate reference to penalty before the jury."

3

The Michigan Court of Appeals rejected this claim and affirmed Petitioner's conviction. Petitioner subsequently filed an application for leave to appeal in the Michigan Supreme Court, which raised the same claim as was before the Michigan Court of Appeals and the following additional claims:

> II. [Petitioner's] "legal right" as well as his constitutional right to self-determination and self-autonomy was violated by the Court of Appeals' refusal to accept for submission his motion to dismiss Appellate Counsel and motion to strike brief. U.S. amends. I, V, IX, XIV; Mich. Const. 1963.
>
> III. [Petitioner's] constitutional right to due process of law and to the effective assistance of counsel on appeal was violated, where counsel failed to perform her duties according to the standards set forth in *Mapes v. Coyle*, 171 F.3d 408 (6th Cir. 1999); *Strickland v. Washington*, 466 U.S. 668, 687 (1984).

The Michigan Supreme Court denied the application because it was not persuaded that the questions presented should be reviewed by the Court. *People v. Coleman*, 480 Mich. 926 (2007) (table).

Petitioner returned to the trial court and filed a motion for relief from judgment, raising the following claims: (1) ineffective assistance of appellate counsel for failure to raise ineffective assistance of trial counsel; (2) violation of due process at trial and sentencing; (3) the trial court failed to advise Petitioner of his right to self-representation and to establish a record waiver of counsel; and (4) Petitioner's sentence was unconstitutionally based on inaccurate information when the trial court failed to resolve a challenge to the scoring of the sentencing guidelines. The trial court denied the motion for relief from judgment. *People v. Coleman*, No. 05-1898-01, Order (Wayne County Cir. Ct. Oct. 2, 2009).

4

Petitioner then filed an application for leave to appeal in the Michigan Court of Appeals. The Michigan Court of Appeals denied the application for leave to appeal for failure to establish entitlement to relief under Michigan Court Rule 6.508(D). *People v. Coleman*, No. 300462 (Mich. Ct. App. Aug. 30, 2011). Petitioner applied for leave to appeal this decision in the Michigan Supreme Court but was also denied relief under Michigan Court Rule 6.508(D). *People v. Coleman*, 491 Mich. 886 (2012) (table).

## STANDARD OF REVIEW

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996. Under the Act, Petitioner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims on the merits: (1) "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d).

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000). An "unreasonable application" occurs when "a state court decision unreasonably applies the law of [the Supreme Court] to the facts of a

5

prisoner's case." *Id.* at 409. A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 410–11.

The Supreme Court has explained that "[a] federal court's collateral review of a state-court decision must be consistent with the respect due state courts in our federal system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a 'highly deferential standard for evaluating state-court rulings,' and 'demands that state-court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n.7 (1997) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

"[A] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)). Furthermore, under § 2254(d), "a habeas court must determine what arguments or theories supported or . . . could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the

6

holding in a prior decision" of the Supreme Court. *Id.* "[I]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 131 S. Ct. at 786.

Although 28 U.S.C. § 2254(d), as amended by the Antiterrorism and Effective Death Penalty Act of 1996, does not completely bar federal courts from relitigating claims that have previously been rejected in the state courts, it preserves the authority for a federal court to grant habeas relief only "in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with" the Supreme Court's precedents. *Id.* Indeed, "Section 2254(d) reflects the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Id.* (citing *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)) (Stevens, J., concurring in judgment)). Therefore, to obtain habeas relief in federal court, a state prisoner is required to show that the state court's rejection of his claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.

## ANALYSIS

### A. Sufficiency of State Post-Conviction Review

Petitioner's first two claims challenge the manner in which his claims were adjudicated in the state courts during his post-conviction review proceeding. He first asserts that he was entitled to a merits review of his claims because he had established "good cause" and "actual prejudice" under Michigan Court Rule 6.508(D)(3). Petitioner's second claim asserts that his constitutional rights were

7

violated when his post-conviction review claims were rejected by the state courts without an evidentiary hearing. Respondent asserts that these claims are not cognizable on federal habeas review.

Respondent is correct. There is no federal constitutional requirement that states must provide a means of post-conviction review of state convictions, and an infirmity in a state post-conviction proceeding therefore does not raise a constitutional issue cognizable in a federal habeas petition. *Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1990); *see also Kirby v. Dutton*, 794 F.2d 245, 247–48 (6th Cir. 1986) (defendant's claims that he was denied the effective assistance of counsel, due process, and equal protection in state's post-conviction proceedings were unrelated to his detention and could not be brought in a federal habeas corpus petition). Even if the state court improperly refused to review the merits of Petitioner's claims because they erred in applying their own post-conviction review procedures, Petitioner's federal constitutional rights were not implicated because he had no constitutional right to post-conviction review.

Moreover, Petitioner had no constitutional right to an evidentiary hearing in the state courts. "The Sixth Circuit consistently [has] held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007). Thus, the denial of an evidentiary hearing by a state court on post-conviction review does not state a claim upon which habeas relief can be granted. *See, e.g., Cornwell v. Bradshaw*, 559 F.3d 398, 411 (6th Cir. 2009). Moreover, there is no clearly established Supreme Court law which

recognizes a constitutional right to a state court evidentiary hearing to develop a claim of ineffective assistance of counsel even on direct appeal. *See Hayes v. Prelesnik*, 193 Fed. App'x 577, 584–85 (6th Cir. 2006). Accordingly, Petitioner is not entitled to habeas relief on this claim.

Nor is Petitioner entitled to a hearing in this Court. The United States Supreme Court made it clear that federal habeas review under 28 U.S.C. §2254(d) is "limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). Consequently, Petitioner is precluded from introducing into the habeas proceeding information that was not presented to the state courts. *See, e.g.*, *Hanna v. Ishee*, 694 F.3d 596, 606 (6th Cir. 2012) (stating that even if a court conducted an evidentiary hearing on a claim adjudicated by the state court, it would have to "disregard newly obtained evidence").

Finally, to the extent Petitioner's first two claims assert that he was denied the effective assistance of counsel during his direct appeal because of counsel's failure to raise the issues raised in his motion for relief from judgment, he has not demonstrated entitlement to relief. It is well established that a criminal defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751 (1983). The United States Supreme Court explained:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and

> effective advocacy . . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Moreover, "[a] brief that raises every colorable issue runs the risk of burying good arguments—those that, in the words of the great advocate John W. Davis, 'go for the jugular,'—in a verbal mound made up of strong and weak contentions." *Id.* at 753 (citations omitted).

Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990). In fact, "the hallmark of effective appellate advocacy" is the "process of 'winnowing out weaker arguments on appeal and focusing on' those more likely to prevail." *Barnes*, 463 U.S. at 751–52. "Generally, only when ignored issues are clearly stronger than those presented will the presumption of effective assistance of appellate counsel be overcome." *Monzo v. Edwards*, 281 F.3d 568, 579 (6th Cir. 2002). Appellate counsel may deliver deficient performance and prejudice a defendant by omitting an obvious winning argument, that is, an issue that is obvious from the trial record and would have resulted in a reversal on appeal. *See, e.g.*, *Meade v. Lavigne*, 265 F. Supp. 2d 849, 870 (E.D. Mich. 2003).

Petitioner has failed to show that appellate counsel's performance fell outside the wide range of professionally competent assistance by omitting the claims that he raised for the first time in his post-conviction motion for relief from judgment. Appellate counsel filed an appellate brief raising a single claim, which will be discussed below. Though the claim raised by appellate counsel does not entitle

10

Petitioner to habeas relief, the omitted claims were not clearly stronger, and it was not outside the range of professionally competent assistance to fail to include them.

For example, Petitioner's lead issue in his motion for relief from judgment claimed that his right to counsel on appeal was violated when the trial court allowed him to proceed pro se in his post-conviction motion hearing without obtaining a valid waiver of counsel. The claim is meritless, however, because a court is only required to warn a defendant of the dangers of self-representation when he seeks to represent himself at trial, but not on appeal. *See Martinez v. Court of Appeal of California*, 528 U.S. 152, 161–63 (2000). Petitioner's other post-conviction claims fair no better. His claims regarding the scoring of his sentencing guidelines were rejected on the merits as a matter of state law by the trial court. This Court may not second-guess that determination. *Serra v. Michigan Dep't of Corr.*, 4 F.3d 1348, 1354 (6th Cir. 1993). Petitioner also claims that his appellate counsel should have challenged the sufficiency of the evidence. This claim is also weaker than the claim raised on direct appeal. Petitioner's challenge amounts to attack on the credibility of the prosecution witnesses, not the legal sufficiency of the evidence. *See Cavazos v. Smith*, 132 S. Ct. 2, 4 (2011). Lastly, Petitioner's claims regarding the effectiveness of his trial counsel are also not clearly stronger than the claim raised on appeal. Petitioner presented the state court with only vague and unsupported claims that his counsel was ill prepared for trial. Such claims do not merit relief. *See Malcum v. Burt*, 276 F. Supp. 2d 664, 685 (E.D. Mich. 2003). Accordingly, Petitioner has not shown that appellate counsel's strategy in

presenting the one claim and not raising these other two claims was deficient or unreasonable. He has therefore not established entitlement to relief based on his claim of ineffective assistance of appellate counsel.

## B. Denial of Motion for Mistrial

Petitioner's third habeas claim asserts that the trial court erred in failing to grant a motion for mistrial after a police detective used the term "mug shot" during his testimony to describe a photograph of Petitioner, and later when he stated that Petitioner was facing a life sentence. This claim was raised by Petitioner's counsel on direct appeal and rejected on the merits by the Michigan Court of Appeals:

> Defendant contends that the trial court should have granted his motion for a mistrial when the officer in charge, Detective-Sergeant Jeffrey Lazarski, referred to defendant's mugshot, which defendant contends placed his criminal history before the jury. During Lazarski's direct examination, the following colloquy occurred:
>
> > Q. After this photo lineup was conducted, what is the next thing that you do in this case?
> >
> > A. Well I realize that this photo was two years old and I wanted—I ran a criminal history on [defendant] to find out if he had more recent mugshots with any police department in the United States.
> >
> > Q. Did you find anymore [sic] recent mugshots?
>
> Thereafter, defense counsel objected and moved for a mistrial on the basis that Lazarski's testimony interjected other bad acts evidence before the jury.
>
> This Court has held that where a defendant does not testify, testimony regarding his mugshot impermissibly places his criminal record before the jury. *People v. Embry*, 68 Mich. App 667, 670 (1976). But in the instant case, the existence of defendant's criminal record was before the jury at the outset, by virtue of the felon in possession of a firearm charge, which required the prosecutor to prove that defendant had

previously been convicted of a felony. *See* MCL 750.224f. In fact, during his opening statement, the prosecutor briefly recited the elements of all three charged offenses, and said: "[W]e have charged [defendant] with the crime called felon in possession of a firearm. [Defendant] has previously been convicted of a felony and his rights to possess, to use, transport a firearm in the State of Michigan have not been restored." Accordingly, Lazarski's testimony regarding defendant's mugshot did not alert the jury to the possible existence of defendant's criminal history. In fact, defendant ultimately stipulated that he had previously been convicted of a felony, and that his right to possess a firearm had not been restored.

Moreover, the trial court's comprehensive cautionary instruction was sufficient to cure any prejudice resulting from the mugshot testimony:

> Ladies and gentlemen, you have heard evidence that the police may have obtained a mug shot of the defendant. You may not use this evidence to conclude that the defendant did anything improper.
>
> You may only use this evidence in determining the reliability of the identification of the defendant by the witnesses.
>
> Ladies and gentlemen, we have inadvertently been informed of certain information, information which has nothing to do with the issues before you in this case.
>
> You are hereby instructed that the information concerning other possible arrest[s] of [defendant] do not and cannot enter into your consideration of the charges against the defendant.
>
> To consider those charges would be highly unfair and would violate your duty a[s] jurors to fairly and truly render a decision based only on the evidence that this Court rules to be admissible.
>
> The mere fact that [defendant] is on trial is no[t] proof that he did anything wrong. The fact that the defendant was arrested in this case does not mean that he did anything wrong.
>
> [Defendant] has a right to be present here at trial just as any one of us has a right to be present and to see, hear, and challenge the accusations that some wrongs were committed.

13

> This right is guaranteed by the laws of our country and the constitution. We should not take this right lightly.
>
> We do not take lightly the right to a fair trial where only legally admissible evidence is considered in rendering a decision.
>
> Such evidence must convince you beyond a reasonable doubt that each and every element of the offense or offenses were charged and have been proven by the prosecution or you cannot return a verdict of guilt as to the charge or charges against [defendant].

Defendant argues that this cautionary instruction only highlighted the irregularity, and could not have eradicated the testimony from the jurors' minds. He further points to the testimony of lay witness Ronald Carriveau, which he contends evidences Lazarski's "habit of exposing [defendant's] prior record[.]" Defense counsel questioned Carriveau as follows:

> Q. What date did you go out to Oakland County?
>
> A. From what I remember, it was right after Oakland County had picked [defendant] up on something else.
>
> Q. Excuse me. Didn't even ask you that, did I, sir?
>
> A. That's—no, you didn't.
>
> Q. Who gave you that information, sir?
>
> A. He was already incarcerated, sir.
>
> Q. Excuse me. Listen to my question. It's not hard. Who gave you that information?
>
> A. Officer Lazarski, sir.

The cautionary instruction previously recited was sufficient to cure any prejudice from Carriveau's testimony. Moreover, because of the overwhelming evidence against defendant, any irregularity regarding his criminal record did not impair his ability to receive a fair trial. *Bauder*, supra at 195; *Ortiz-Kehoe*, supra at 514.

The prosecutor presented evidence that the storeowner observed a gold-colored SUV pulling in and out of parking spaces in the parking

lot. He became suspicious and wrote down the vehicle's license plate number. The vehicle was registered to Joan Dunn, who testified that she lent defendant her SUV to pick up supplies that he needed to perform work around her house. A car registered to defendant was parked in Dunn's driveway while he borrowed her SUV. When defendant returned Dunn's vehicle later that day, he had no supplies. When the police arrested defendant the day after the robbery, they recovered $3,947 in cash from his person and $2,600 in cash from his vehicle. In addition, several witnesses, including Yono, identified defendant at a photographic lineup.

Further, defendant made several incriminating statements after his arrest. Lazarski asked defendant if he knew Dunn, and he shook his head. When Lazarski told defendant that Dunn's SUV was used to commit a crime and might be forfeited, however, defendant responded, "[expletive deleted] her she's got a good job she can buy a new one." When asked about the money that was found on his person and in his vehicle when he was arrested, defendant claimed that he owned two businesses, but was unable to verify this. Moreover, when asked about the rest of the money, defendant replied that he could use it to hire a lawyer and abruptly added, "if I had it." Thus, the evidence against defendant was substantial, even overwhelming, and any error with respect to testimony concerning his criminal history was not so prejudicial that it denied him a fair trial. The trial court therefore did not abuse its discretion by denying defendant's motion for a mistrial.

Defendant also argues that the trial court should have granted his motion for a mistrial when Lazarski informed the jury that defendant was facing life imprisonment. During Lazarski's direct examination, he testified as follows:

> A. I wanted the rest of the money and I said if [defendant] gave me or told me where the rest of the money was I could talk to the prosecutor and see if that would go in his favor.
>
> Q. Okay. What was [defendant's] response to that.
>
> A. His demeanor changed and he told me that armed robbery was a floater which I know it means to be you get life in prison for.

Defense counsel immediately objected and renewed his motion for a mistrial, which the trial court denied.

> A volunteered and unresponsive answer to a proper question generally does not warrant granting a motion for a mistrial. *People v. Haywood*, 209 Mich. App 217, 228 (1995). But a police witness has a special obligation not to venture into forbidden matters while testifying. *People v. Holly*, 129 Mich. App 405, 415–416 (1983). When a police officer makes an unresponsive remark, we scrutinize it to ensure that it has not prejudiced the defendant. *Id.* at 415.
>
> Considering the overwhelming evidence against defendant outlined above, we conclude that the fleeting reference to defendant's possible sentence did not prejudice him and impair his ability to receive a fair trial. *Bauder*, supra at 195; *Ortiz-Kehoe*, supra at 514. Moreover, the trial court instructed the jurors that the possible penalty should not influence their decision. Jurors are presumed to follow instructions. *Bauder*, supra at 195. Accordingly, the trial court did not abuse its discretion by denying defendant's motion for a mistrial on this basis.

*Coleman*, 268770, 2007 WL 1791694.

References to mug shots are usually prejudicial because they suggest that a defendant had been arrested in the past and was suspected of committing a crime. Use of a mug shot, however, is not always reversible error in a habeas corpus proceeding. *See, e.g.*, *Murray v. Superintendent*, 651 F.2d 451, 454 (6th Cir. 1981) (explaining that mug shot evidence is unfair and prejudicial because it informs the jury that the defendant has a criminal record, but that constitutional error did not infect the petitioner's state trial because the mug shot revealed nothing that the jury did not already know and the limiting instruction was adequate to cure any incremental prejudice).

Here, as noted by the state appellate court, the fact that Petitioner had a prior record was otherwise properly before the jury because he was charged with felon in possession of a firearm. As part of that charge the prosecutor was required to prove that Petitioner had been previously convicted of a felony. Additionally, the trial

16

court carefully instructed the jury regarding the limited use of the evidence that Petitioner was a convicted felon. The Court must presume that the jury followed this instruction. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987); *see also Shannon v. United States*, 512 U.S. 573, 585 (1994); *United States v. Olano*, 507 U.S. 725, 740 (1993); *Francis v. Franklin*, 471 U.S. 307, 324 n.9 (1985).

Furthermore, the state appellate court noted the substantial evidence of Petitioner's guilt, despite testimony regarding the mug shot and the possible life sentence. The victim of the robbery obtained the license plate of the vehicle used in the robbery, and the owner of that vehicle testified that she lent it to Petitioner. Thereafter, eyewitnesses identified Petitioner as the assailant, and large sums of cash were found when he was arrested. In light of this evidence, the alleged evidentiary errors were not so overwhelming that they substantially affected the jury's verdict. *Cf. Ford v. Curtis*, 277 F.3d 806, 811 (6th Cir. 2002) (explaining that evidence that the habeas petitioner was among the FBI's Ten Most Wanted List and appeared on the television show "America's Most Wanted" had nominal relevance and was prejudicial, but that the "bad acts" evidence did not substantially affect the jury's verdict and, therefore, the state court did not unreasonably conclude that the error was harmless).

Accordingly, the Michigan appellate court's adjudication of Petitioner's third claim was not contrary to, and did not involve an unreasonable application of, clearly established Supreme Court law. Petitioner has therefore not demonstrated entitlement to habeas relief.

17

## CERTIFICATE OF APPEALABILITY

Before Petitioner may appeal this decision, a certificate of appealability must issue. *See* 28 U.S.C. § 2253(c)(1)(a); Fed. R. App. P. 22(b). A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court denies a habeas claim on the merits, the substantial showing threshold is met if the petitioner demonstrates that reasonable jurists would find the district court's assessment of the constitutional claim debatable or wrong. *See Slack v. McDaniel*, 529 U.S. 473, 484–85 (2000). "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, a court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of the claims. *Id.* at 336–37. The Court concludes that a certificate of appealability is not warranted in this case because reasonable jurists could not debate the Court's assessment of Petitioner's claims. The Court will also deny Petitioner permission to proceed on appeal in forma pauperis because an appeal could not be taken in good faith.

## CONCLUSION

For the foregoing reasons, it is ORDERED that the petition for a writ of habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE. It is FURTHER ORDERED that a certificate of appealability is DENIED. It is

18

FURTHER ORDERED that permission to proceed on appeal in forma pauperis is DENIED.

s/Terrence G. Berg  
TERRENCE G. BERG  
UNITED STATES DISTRICT JUDGE

Dated: March 13, 2014

### Certificate of Service

I hereby certify that this Order was electronically submitted on March 13, 2014, using the CM/ECF system, which will send notification to each party.

By: s/H. Monda for A. Chubb  
Case Manager